**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Greg Jacobi, | Case No.: 2:12-cv-2075-JAD-GWF |
| Plaintiff, | |
| v. | **Order Dismissing Complaint for Failure to Demonstrate Demand Futility [# 17] with Leave to Amend** |
| Charles W. Ergen, et al., | |
| Defendants. | |

This shareholder-derivative action challenges the EchoStar Corporation's compensation committee's decision to award its board chairman and principal shareholder Charles Ergen options for 1.5 million shares of stock—700,000 more than the annual cap set by the company's stock-incentive plan.  Without first making a demand on EchoStar's current board of directors, shareholder Greg Jacobi sued EchoStar, Ergen, and several of EchoStar's directors alleging that the award, and particularly the 700,000 excess shares over the annual cap, was a "fundamentally unfair," ultra vires act permitted by fiduciary breaches and resulting in Ergen's unjust enrichment.  I find that Jacobi has failed to plead with sufficient particularly facts that show his pre-suit demand on the EchoStar board of directors was excused as futile, and I dismiss this action with leave to amend.

**Background**[1]

EchoStar is a Nevada holding company whose wholly-owned subsidiaries design and distribute digital set-top boxes for satellite TV service providers and cable companies, and provide digital broadcast and satellite services to DISH Network and other satellite services.[2]  Ergen has been Chairman and a director of EchoStar since 2007, he is the company's majority shareholder, and he served as EchoStar's CEO until 2009.[3]  Ergen no longer has managerial responsibility for EchoStar;

---

[1] These facts are taken from plaintiff's verified complaint, Doc. 1, construed in the light most favorable to the plaintiff, and not intended as any finding of fact.

[2] Doc. 1 at 5.

[3] *Id*. at 5, ¶¶ 18, 30.

1

"his only role is now to provide 'guidance' to management in his capacity as Chairman."[4]  Ergen is also the majority shareholder and Chairman of the Board of EchoStar's spinoff company, DISH Network, which is also one of EchoStar's primary customers.[5]

On March 31, 2011, EchoStar's three-member compensation committee, consisting of Tom Ortolf, C. Michael Schroeder, and Joseph Clayton, awarded Ergen 1.5 million stock options to purchase EchoStar's Class A common stock, valued at $21.6 million.[6]  Jacobi alleges that the award violated the limitations of EchoStar's shareholder-approved Amended and Restated 2008 Stock Incentive Plan (the "SIP"), which provides, "no Participant may be granted Awards . . . in the aggregate in respect of more than 800,000 Shares in any one calender year. . . ."[7]  He characterizes the award as "not in fact 'compensation' at all, but rather a stealth dividend issued to the controlling shareholder."[8]  And he contends that the award of options for the excess 700,000 shares two years after Ergen stepped down as CEO was an ultra vires act, and that the sheer size of the entire 1.5 million-option award "was fundamentally unfair to the Company for a host of reasons."[9]

Jacobi sues the board of directors at the time of the award (Ergen, Ortolf, Schroeder, Michael Dugan, R. Stanton Dodge, Joseph Clayton, and David Moskowitz) for fiduciary breaches and corporate waste, and he sues Ergen separately for fiduciary breaches and unjust enrichment—all derivatively on behalf of EchoStar.[10]  "Derivative suits allow shareholders to 'compel the corporation to sue' and to thereby pursue litigation on the corporations behalf against the corporation's board of directors and officers."[11]  "But because the power to manage the corporation's affairs resides in the

---

[4] Id. at 9.

[5] Id. at ¶¶ 17, 34–36.

[6] Id. at 13, ¶ 5, 46.

[7] Id. at 13, ¶45.

[8] Id. at 17, ¶ 56.

[9] Id. at 14, ¶ 49.

[10] Id. at 6–7, 20–23.

[11] Shoen v. SAC Holding Corp., 137 P.3d 1179 (Nev. 2006).

2

board of directors, a shareholder must, before filing suit, make a demand on the board, or if necessary, on the other shareholders, to obtain the action that the shareholder desires."[12]  At the time Jacobi filed suit, EchoStar's board of directors consisted of Ortolf, Schroeder, Ergen, Dodge, Dugan, Anthony Federico, and Pradman Kaul.[13]  Jacobi did not make a pre-suit demand on the board to challenge the award, and he alleges that demand would have been "a futile and useless act because the Current Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action."[14]

Defendants move to dismiss Jacobi's shareholder-derivative action, arguing that, "[h]ad [p]laintiff done what the law requires him to do—make a pre-suit demand—this litigation and the expenses associated with it would have been avoided" because the award of the excess 700,000 options was canceled immediately after the lawsuit was filed.[15]  They contend that Jacobi has not sufficiently pled demand futility as required to permit him to maintain this action on behalf of EchoStar and, regardless, each of his claims should be dismissed under FRCP 12(b)(6) for failure to state a viable claim.  The parties agree that the cancellation moots Jacobi's claim for corporate waste, but they disagree on the sufficiency of his other claims and demand-futility allegations.  Having thoroughly considered the parties' extensive briefing and arguments at the hearing on this motion, I find that Jacobi's allegations do not sufficiently establish that a pre-suit demand would have been futile, and I dismiss his complaint with leave to amend.

## Discussion

### A.    Demand futility

Shareholder derivative suits are anathema to the general rule that "a corporation's 'board of directors has full control over the affairs of the corporation,'" which includes the decision "whether

---

[12] *Id.*

[13] Doc. 1 at 18, ¶ 61.

[14] *Id.* ¶ 62.

[15] Doc. 17 at 2.

to take legal action on the corporation's behalf."[16]  Before a shareholder can file suit on the

company's behalf, he must first demand that the board obtain for the company "the action that [he]

desires."[17]  The pre-suit demand requirement is excused only if the plaintiff demonstrates in his

complaint that the demand would have been futile.[18]  To determine demand futility, the district court

applies the law of the state of incorporation—in this case, Nevada.[19]  When a shareholder files

derivative claims without a pre-suit demand, he must plead "with particularity . . . the reasons for not

obtaining the action or not making the effort."[20]  The relevant facts "must be put forth in the

complaint and not merely in subsequent briefs."[21]  This heightened pleading burden "is . . . more

onerous than that required to withstand a Rule 12(b)(6) motion."[22]

### 1.    *Aronson* or *Rales*?

Nevada courts apply one of two tests developed by the Delaware courts to evaluate the

plaintiff's allegations to determine whether demand is futile and thus excused.[23]  As the Nevada

Supreme Court explained in *Shoen v. SAC Holding Corp.*, "in those cases in which the directors

approved the challenged transaction[]," the court applies the test from *Aronson v. Lewis*.[24]  The two-

pronged *Aronson* test "applies to determine if a complaint has created a reasonable doubt as to

whether the directors, having made a business decision, were disinterested and independent, or likely

---

[16] *Shoen*, 137 P.3d at 1178–79.

[17] *Id*. at 1179.

[18] *See id.* at 1184.

[19] *See In re Silicon Graphics, Inc. Secs. Litig.*, 183 F.3d 970, 989–90 (9th Cir. 1999
(superseded by statute on other grounds); Doc. 1 at 5, ¶ 16 (alleging that EchoStar is a Nevada
corporation).

[20] Fed. R. Civ. Proc. 23.1.

[21] *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007).

[22] *Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008) (quotation omitted).

[23] *In re Amerco Derivative Litig.*, 252 P.3d 681, 697–98 (Nev. 2011).

[24] *Shoen*, 137 P.3d at 1184; *see also In re Computer Sciences Corp. Deriv. Litig.*, 244 F.R.D.
580, 586 (C.D. Cal. 2007) (applying Nevada law and citing *Aronson v. Lewis*, 473 A.2d 805, 812
(Del. 1984), *overruled on other grounds in Brehm v. Eisner*, 746 A.2d 244, 254  (Del. 2000)).

1  entitled to the business judgment rule's protection."[25]  But "where the contested corporate transaction

2  is not the result of director action," the test from *Rales v. Blasband* applies, and "the demand futility

3  analysis is limited to whether a majority of the directors had a disqualifying interest in the matter or

4  were otherwise unable to act on the demand with impartiality."[26]

5      All of Jacobi's claims challenge a single transaction: the compensation committee's March

6  31, 2011, award to Ergen of 1.5 million EchoStar stock options to purchase EchoStar's Class A

7  common stock.[27]  Jacobi attempts to tie the board of directors into this action by vague allegations

8  that "the Board granted" these stock options and "breached their fiduciary duties by authorizing,

9  approving, and/or by abdication of duty permitting stock option grants in violation of the terms of the

10  Incentive Plan."[28]  But these generalized statements do not square with the more particularly pled

11  facts in the verified complaint that the decision was made exclusively by the three-member

12  compensation committee.[29]

13      For example, Jacobi states in paragraph 10 that "the Board allowed its compensation

14  committee, the members of which are effectively controlled by Ergen, to determine his

15

16  ————————————

17      [25] *Shoen*, 137 P.3d at 1182.

18      [26] *Id.* at 1187; *In re Computer Sciences Corp. Deriv. Litig.*, 244 F.R.D. at 586 (citing *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)).

19      [27] Doc. 1 at 13, ¶ 46.  In count four, Jacobi alleges that the board members wasted corporate
20  assets "by granting Ergen stock options in excess of what was authorized under the Incentive Plan."
    Doc. 1 at 22.  Plaintiff's counsel conceded at oral argument that this claim is moot because the award
21  of the options in excess of the SIP-authorized cap was canceled before it ever vested.  Doc. 56 at 61,
    lines 19–24.  Although I am limiting my analysis for all other purposes to the well-pled facts of the
22  verified complaint, the parties' clear agreement that the corporate-waste claim is no longer viable
    compels me to dismiss this claim as concededly moot and consider only claims one through three.

23      [28] Doc. 1 at ¶¶ 5, 6, 71.

24      [29] I need not credit conclusory allegations belied by more specific allegations in the
25  complaint. *See Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995) ("General,
    conclusory allegations need not be credited, however, when they are belied by more specific
26  allegations of the complaint."); *Griffin Industries, Inc. v. Irvin*, 496 F.3d 1189, 1205–06 (11th Cir.
    2007) ("Our duty to accept the facts in the complaint as true does not require us to ignore specific
27  factual details of the pleading in favor of general or conclusory allegations."); *see also Desimone v.
    Barrows*, 924 A.2d 908, 928 (Del. 2007) (noting that the court need "not accept cursory contentions
28  of wrongdoing as a substitute for the pleading of particularized facts" for the demand-futility
    analysis).

compensation."[30]  And although Jacobi highlights a number of things he alleges the board did *not* do, ("[t]he Board did not engage in arms-length negotiations when determining the amount of compensation to award Ergen," or "seek the guidance of any consultants or advisors to determine what a fair award should be"[31]), the well-pled facts reflect that all affirmative action taken with respect to this stock-option award was performed by the compensation committee alone.  ("On March 31, 2011, the Compensation Committee awarded Ergen 1.5 million stock options . . . under the Incentive Plan," which Jacobi alleges is administered by the Compensation Committee[32]; "the Compensation Committee did not negotiate for and/or receive adequate consideration (if any at all) in return" for the award[33]; "the Compensation Committee did not consult any advisors or consultants," though it "engaged a compensation consultant . . . *after* the 2011 compensation decisions were already made"[34]; and "[t]he Compensation Committee's actions in violating the express terms of the Incentive Plan by definition could not have been a good faith exercise of business judgment"[35]).  Based on the totality of these allegations, the only fair reading of the complaint is that Jacobi's challenge relates to a single transaction: the compensation committee's award of the stock options to Ergen.

Because this challenged transaction was not the result of an affirmative vote by the board itself or an action by a majority of the board members,[36] all of Jacobi's claims must be evaluated under the *Rales* test for demand futility.[37]  I thus consider whether Jacobi's "particularized factual

---

[30] *Id*. at 4, ¶ 10.

[31] *Id*. at 4, ¶ 9.

[32] *Id*. at 13, ¶¶ 44, 46.

[33] *Id*. at 15, ¶ 53.

[34] *Id*. at 16, ¶ 55.

[35] *Id*. at 19, ¶ 64.

[36] *See Shoen*, 137 P.3d at 1186 (recognizing the "especially strong" need for a demand when "it is not alleged that the board has affirmatively voted for the alleged ultra vires acts").

[37] The parties apply *Aronson* in their arguments for and against demand futility.  At bottom, this may be a distinction without a difference.  As the *Shoen* court noted, "in practice, the *Aronson* and *Rales* 'disinterested and independent' tests often amount to the same analysis—i.e., whether

allegations . . . create a reasonable doubt that, as of the time the complaint [wa]s filed, [a majority of] the board of directors could have properly exercised its independent and disinterested business judgment in responding to" Jacobi's demand.[38]  I "accept as true each of the complaint's particularized factual allegations and draw every fair factual inference flowing from those particularly alleged facts in favor of" Jacobi.[39]

> **2.    Jacobi's allegations do not create a reasonable doubt that a majority of the board of directors lacked the ability to exercise independent and disinterested business judgment to consider his pre-suit demand.**

Under the *Rales* test, "directors' independence can be implicated by particularly alleging that the directors' execution of their duties is unduly influenced, manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the person doing the controlling.' A lack of independence also can be indicated with facts that show that the majority is 'beholden to' directors who would be liable or for other reasons is unable to consider a demand on its merits, for directors' discretion must be free from the influence of other interested persons."[40]

Nobody disagrees that Ergen is neither independent nor disinterested; and there is no debate that Federico, who joined the board after the subject stock-option award, is disinterested and independent.  This leaves me to consider only whether Jacobi's complaint satisfies the *Rales* test for at least three of the other board members: compensation committee members Ortolf and Schroeder, and the remaining board members Dodge, Dugan, and Kaul, such that Jacobi's pre-suit demand was

---

directoral interest in the challenged act or the outcome of any related litigation negates impartiality to consider a demand."  *Shoen*, 137 P.3d at 1184 n.62.

That *Rales* is the proper analysis for the claims arising from the compensation committee's action is consistent with the Central District of California's application of the *Rales* test to a claim that a compensation committee backdated options in *In re Computer Sciences Corporation*, 244 F.R.D. at 590; and the District of Delaware's recognition in *Halpert v. Zhang*, 966 F. Supp.2d 406, 412–13 (2013), that demand futility for a claim challenging a compensation committee's stock-option grant would have been evaluated under *Rales* had one additional, non-committee-member director not actively participated in making the challenged grants, resulting in a majority of the directors being responsible for the decision and thus triggering an *Aronson* analysis.

[38] *Rales*, 634 A.2d at 934.

[39] *Shoen*, 137 P.3d at 1180.

[40] *Id*. at 1183 (quoting *Aronson*, 473 A.2d at 816; *Rales*, 634 A.2d at 936).

1    excused as futile.

2                    a.      *Ortolf*

3         To create a reasonable doubt that Ortolf was capable of a disinterested and independent

4    consideration of his demand, Jacobi alleges that Ortolf, as a member of the compensation committee

5    that granted the stock options, faces "a substantial likelihood of liability" rendering him "incapable

6    for objectively considering a demand."[41]  He further alleges that Ortolf "has a long and substantial

7    relationship with Ergen," first from 1988-1991 and later beginning in 2005, having put Ortolf in

8    executive positions and on boards.[42]  He concludes that this history renders "Ortolf . . . incapable of

9    making an independent and disinterested decision to institute and vigorously prosecute this action."[43]

10        Ortolf's membership on the committee when it made the stock-option-grant decision is not

11   enough to demonstrate that he was incapable of exercising independent judgment in evaluating

12   Jacobi's demand.  Numerous courts have rejected the argument that "the mere threat of personal

13   liability for approving a questioned transaction, standing alone, is insufficient to challenge the

14   disinterestedness of directors."[44]  As the Third Circuit expressed during its consideration of the *Rales*

15   facts, a plaintiff may not "bootstrap allegations of futility" by pleading that "the directors participated

16   in the challenged transaction or that they would be reluctant to sue themselves."[45]  And the Nevada

17   Supreme Court recognized in *Shoen* that "[a]llegations of mere threats of liability through approval

18   of the wrongdoing or other participation . . . do not show sufficient interestedness to excuse the

19   demand requirement."[46]  A director's misconduct must rise at least to the level of gross negligence to

20   state a breach-of-the-fiduciary-duty-of-due-care claim, or involve "intentional misconduct, fraud, or

21   a knowing violation of the law," to state a duty-of-loyalty claim—standards the Nevada Supreme

22   _____

23   [41] Doc. 1 at 19, ¶¶ 64–65.

24   [42] *Id*.

25   [43] *Id.*

26   [44] *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1192 (C.D. Cal. 2007)
     (collecting cases).

27   [45] *Blasband v. Rales*, 971 F.2d 1034, 1049 (3rd Cir. 1992).

28   [46] *Shoen*, 137 P.3d at 1183.

1  Court characterized in *Shoen* as a "difficult threshold to meet."[47]

2      Jacobi characterizes the stock-option grant as a violation of the SIP, "extravagant,"[48]

3  "fundamentally unfair to the company,"[49] and not "in good faith,"[50] but his allegations do not rise to

4  the level necessary to plead interestedness through potential liability.  As the district court reasoned

5  in *In re Computer Sciences Corp. Derivative Litigation* when finding that shareholders failed to

6  plead with sufficient particularly facts excusing their pre-suit demand before challenging

7  compensation-committee actions, alleging merely that some directors are responsible for errors made

8  is not enough.[51]  "In a derivative case like this one, a board of directors is entitled to a presumption

9  that they can and should be allowed to manage the business affairs of a corporation, including the

10  decision of whether and how to investigate errors like these and whether ultimately to bring claims

---

13      [47] *Id*. at 1184.

14      [48] Doc. 1 at 3, ¶ 8.

15      [49] *Id*. at ¶ 49.

16      [50] *Id*. at ¶ 72.  I do not find facts to support the conclusion that the challenged stock-option
   award was ultra vires because the number of shares exceeded the SIP cap.  "A corporate act is said to
17  be ultra vires when it goes beyond the powers allowed by state law or the [corporation's] articles of
   incorporation."  *Shoen*, 137 P.3d at 1185.  There are no allegations that this stock-issuance went
18  beyond the powers of the corporation itself granted by law or by the company's articles of
   incorporation.

20      [51] *Compare to Ryan v. Gifford*, 918 A.2d 341, 358 (Del. 2007) (concluding board's
   "intentional violation of a shareholder approved stock option plan, coupled with fraudulent
21  disclosures regarding the directors' purported compliance with that plan, constitute conduct that is
   disloyal to the corporation" sufficient to establish demand futility); *Sanders v. Wang*, 1999 WL
22  1044880, at *5 (Del. Ch. Nov. 8, 1999).  The parties cite heavily to *Sanders*, an unpublished case
   that applied *Aronson* to the demand futility question and held that the board's granting of stock in
23  excess of a stock plan limit "raise[d] doubt that the board's actions resulted from a valid exercise of
   business judgment."  From there, the *Sanders* court concluded that, because the board itself made the
24  stock award and a majority of its members either made the award or received it, there was no need to
   consider director disinterestedness.  *Sanders*, 1999 WL 1044880, at *5.  I find *Sanders* of persuasive
25  value only because it is an unpublished case that Nevada has not adopted.  More persuasive is *In re
   FalconStor Software, Inc.*, in which a New York trial court concluded after a careful reading of
26  Delaware case law that "the actions of the committee that violate the corporate regulations must be
   both knowing and intentional" to qualify as interested directors.  996 N.Y.S.2d 642, 651-52 (N.Y.
27  Sup. Ct. 2013) (citing *Aronson*).  A careful reading of Jacobi's complaint indicates that while he
   alleges the committee's decision "could not have been a good faith exercise of business judgment"
28  and the award defies common sense, he stops short of actually alleging these violations were
   knowing and intentional.  *See* Doc. 1 at 19.

1    on the corporation's behalf."[52]  "Absent particularized allegations showing the board is unworthy of

2    this deference, a derivative plaintiff must first make a demand on the board to investigate its

3    claims."[53]

4         Nor does Ortolf's history of business relationships with Ergen excuse the demand.  "When

5    lack of independence is charged, a plaintiff must show that the [b]oard is either dominated by an

6    officer or director who is the proponent of the challenged transaction or that the [b]oard is so under

7    his influence that its discretion is 'sterilize[d].'"[54]  The *Aronson* court clarified that "a plaintiff

8    charging domination and control of one or more directors must allege particularized facts

9    manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or

10   interests of the corporation (or persons) doing the controlling.'  The shorthand shibboleth of

11   'dominated and controlled directors' is insufficient."[55]  Even allegations of friendship or affinity are

12   insufficient to rebut the presumption that a director acts independently.[56]

13        Jacobi's allegations do not demonstrate Ortolf is so beholden to Ergen that his discretion

14   could not be independently exercised.  The closest he gets is alleging that Ortolf "has set

15   compensation for Ergen for two separate companies, both of which are under Ergen's control," but

16   he does not even insinuate that Ortolf did so in a way that suggests that Ortolf is somehow beholden

17   to, or under the control of Ergen.[57]  Jacobi's allegations that (1) because Ergen is EchoStar's

18   controlling shareholder and (2) because Ergen is also the "controlling stockholder and Chairman of

19   DISH Network," the company from which EchoStar derived more than half its revenue from 2011-

20

21        [52] *In re Computer Sciences Corp. Derivative Litig.*, 244 F.R.D. at 591.

22        [53] *Id.*

23        [54] *Blasband*, 971 F.2d at 1048 (quoting *Levine v. Smith*, 591 A.2d 194, 205 (Del. 1991),
     *overruled on other grounds in Brehm v. Eisner*, 746 A.2d 244 (Del. 2000)).

24        [55] *Aronson*, 473 A.2d at 516 (quoting *Kaplan v. Centex Corp.*, 284 A.2d 119, 123 (Del. Ch.
25   1971)); *Shoen*, 137 P.3d at 1183 (quoting *Aronson*, 473 A.2d at 516).

26        [56] *See, e.g.*, *Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040,
     1052 (Del. 2004).

27        [57] *Compare to In re Amerco Derivative Litig.*, 252 P.3d 681, 698–99 (Nev. 2011) (finding
28   allegations of close family relationships and a history of specific incidents of domination, influence,
     and demonstrated alliances sufficient to establish demand futility).

2013, all of the EchoStar board members "must act to appease Ergen and [are] incapable of acting independently"[58] are purely conclusory and lack any factual support.  Jacobi simply has not satisfied his FRCP 23.1 burden of pleading demand futility with respect to Ortolf.

### b.    Schroeder

Jacobi's allegations of Schroeder's interestedness are even less compelling.  He alleges merely that "Schroeder served on the Board of" DISH Network's predecessor company from 2003 until it became EchoStar and Ergen elected Schroeder "to continue to serve on the Board ever since."[59]  He further alleges that Schroeder, like Ortolf, faces "a substantial likelihood of liability and [was] therefore . . . incapable of objectively considering a demand."[60]  Just as these allegations were inadequate to satisfy *Rales* for Ortolf, they are inadequate to demonstrate a lack of independence on the part of Schroeder.

### c.    Dugan and Kaul

Jacobi alleges that "Dugan is the Chief Executive Officer and President" of EchoStar and "Kaul is the President of a wholly-owned subsidiary of EchoStar."[61]  Both received more than $800,000 in compensation from EchoStar in 2011 "and as such depend on their employment with the Company for their livelihood."[62]  They are therefore "incapable of making an independent and disinterested decision to institute and vigorously prosecute this action."[63]  Jacobi further alleges that neither Dugan nor Kaul is "considered independent under either the requirements of NASDAQ or the SEC."[64]

That Dugan or Kaul depends on his employment at EchoStar for his livelihood has nothing to

---

[58] Doc. 1 at 10–11.

[59] *Id.* at 12, ¶ 40.

[60] *Id*. at 19, ¶ 64.

[61] *Id*. at 20, ¶ 67.

[62] *Id.*

[63] *Id*.

[64] *Id.*

do with Ergen.  As Jacobi explains in paragraph nine of his verified complaint, Ergen "stepped down

as CEO" and is "no longer . . . responsible for managing the Company; his only role now is to

provide 'guidance' to management in his capacity as Chairman."[65]  Thus, Jacobi has pled no facts to

suggest that Dugan's employment at a company that Ergen no longer manages—or Kaul's

employment at the subsidiary of a company Ergen no longer manages—could be threatened by his

reconsideration of Ergen's stock-options award.[66]  Even if he had connected these dots, the

assumption that a director lacks independence based on his employment is not enough.  As numerous

courts have recognized, "demand futility cannot be pled merely on the basis of allegations that

directors acted or would act to preserve their positions.  If these allegations were sufficient to show

lack of independence, every insider director would be disabled from considering a pre-suit

demand."[67]  Jacobi has not pled sufficient facts to raise a reasonable doubt that Dugan or

Kaul—neither of whom sat on the compensation committee—could impartially consider a demand

from Jacobi regarding the stock-option grant to Ergen.

That Dugan and Kaul are not considered "independent" under the NASDAQ or SEC rules is

also not dispositive of their independence for demand-futility purposes.  The independence standards

of these entities and the independence standard for the demand-futility analysis are unrelated.[68]

Under the NASDAQ standard, any inside director would be considered not independent.  This is not

the applicable standard for analyzing demand futility.  Because independence has a different

meaning in the demand-futility analysis than under these additional standards, I find these

---

[65] *Id*. at 4, ¶ 9.  Jacobi further alleges that Ergen's "exact responsibilities as Chairman [of EchoStar] are unclear."  *Id*. at 9, ¶ 31.

[66] Jacobi alleges that Ergen has the power to elect a majority of the directors, *see* Doc. 1 at ¶ 34, but he alleges nothing of Ergen's ability to effect employment decisions at EchoStar.

[67] *In re Sagent Technology, Inc. Derivative Litig.*, 278 F. Supp. 2d 1079, 1089 (N.D. Cal. 2003) (citing *Grobow v. Perot*, 539 A.2d 180, 188 (Del. 1988), *overruled on other grounds*, 746 A.2d 244 (Del. 2000)).

[68] *Compare* NYSE Listed Company Manual § 303A.02 (2009), and NASDAQ Listing Rule § 5605 *with Rales*, 634 A.2d at 936. *See also Stockman-Sann v. McKnight*, 2013 WL 8284817, *9 (C.D. Cal. March 25, 2013) (declining to consider these standards in demand-futility analysis); *accord*, *In re Google, Inc. Shareholder Derivative Litig.*, 2013 WL 5402220, *7 (N.D.Cal. Sept. 26, 2013).

12

1    designations of Dugan and Kaul immaterial to my analysis.

2         ***d.  Summary***

3       Because Jacobi has not satisfied his burden to show his pre-suit demand was futile with

4    respect to Federico, Ortolf, Schroeder, Dugan, or Kaul—five of the seven board members at the time

5    Jacobi filed this action—his claims must be dismissed.[69]  And because I am dismissing all claims

6    under FRCP 23.1, I decline to reach the other dismissal arguments raised in defendants' motion as

7    they are now moot.

8    **B.  Leave to Amend**

9       At the end of his response to the defendants' motion to dismiss, Jacobi requests leave to

10   amend his complaint should the court find his allegations insufficient.[70]  Rule 15 of the Federal Rules

11   of Civil Procedure requires district courts to "freely give leave [to amend] when justice so

12   requires."[71]  The Ninth Circuit has long recognized that this policy is "to be applied with extreme

13   liberality."[72]  In the seminal leave-to-amend case of *Forman v. Davis*, the United States Supreme

14   Court explained, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a

15   proper subject of relief, [the Plaintiff] ought to be afforded an opportunity to test his claim on the

16   merits."[73]  Still, amendment is not automatic.  If reasons justify denying opportunity to amend, the

17   court has discretion to foreclose amendment.[74]  In the Ninth Circuit, courts consider five factors

18   when determining whether to grant leave: (1) bad faith, (2) undue delay, (3) prejudice to the

19   opposing party, (4) futility of amendment, and (5) whether the plaintiff has previously amended the

20

21

---

22      [69] This tally renders any conclusion with respect to Dodge irrelevant to the ultimate outcome.

23      [70] Doc. 25 at 27.

24      [71] Fed. R. Civ. Proc. 15(a)(2); *Sonoma County Ass'n of Retired Emps. v. Sonoma County*, 708
25   F.3d 1109, 1117 (9th Cir. 2013).

26      [72] *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation
     omitted).

27      [73] *Forman v. Davis*, 371 U.S. 178, 182 (1962).

28      [74] *See Forman*, 371 U.S. at 182.

1  complaint.[75]  Any of the first four factors can serve as a basis for denying leave to amend.[76]

2       I am not yet convinced that Jacobi cannot state sufficient facts to demonstrate demand

3  futility, and I find that he should be permitted one more opportunity to state his demand-futility

4  allegations if he has additional facts to support them.  Because the parties agree that his corporate-

5  waste claim is moot, any amended complaint should not replead that claim.  Accordingly, should

6  Jacobi believe that he has sufficient additional facts to demonstrate demand futility, he has until

7  April 20, 2015, to file an amended complaint.

8                                          **Conclusion**

9       Accordingly, it is HEREBY ORDERED that Defendants' Motion to Dismiss **[Doc. 17] is**

10 **GRANTED** in part.  The complaint is dismissed without prejudice for failure to file a pre-suit

11 demand or sufficiently plead demand futility.  Jacobi has until April 20, 2015, to file an amended

12 complaint if he can state additional facts to establish demand futility.  **If Jacobi fails to file a**

13 **sufficiently pled amendment complaint by April 20, 2015, his claims will be dismissed with**

14 **prejudice and this case will be closed.**

15       DATED: March 30, 2015.

16
                                      _____
17                                    Jennifer A. Dorsey
                                      United States District Judge
18

19

20

21

22

23

24

25

26

27      [75] *Johnson v. Buckley*, 356 F.3d 1067, 1077 (9th Cir. 2004).

28      [76] *Chudacoff v. Univ. Med. Ctr. of So. Nev.*, 649 F.3d 1143, 1152 (9th Cir. 2011).