**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Greg Jacobi, derivatively on behalf of EchoStar Corporation,<br><br>    Plaintiff<br><br>v.<br><br>Charles W. Ergen, et al.,<br><br>    Defendants | 2:12-cv-02075-JAD-GWF<br><br>**Order Granting Motion to Dismiss, Granting Motion to Strike, and Closing Case**<br><br>**[ECF 50, 56]** |

This shareholder-derivative action challenges the EchoStar Corporation's compensation committee's decision to award its chairman and principal shareholder Charles Ergen 1.5 million stock options—700,000 more than the annual cap set by the company's stock-incentive plan. Without first making a demand on EchoStar's current board of directors, shareholder Greg Jacobi sued EchoStar, Ergen, and several of EchoStar's directors for fiduciary breaches and unjust enrichment. I dismissed Jacobi's complaint with leave to amend because he failed to sufficiently plead demand futility.[1] Jacobi timely filed an amended complaint;[2] defendants again move to dismiss.[3] Because Jacobi's amended complaint still lacks facts to show that his pre-suit demand on the EchoStar board of directors was excused as futile, I grant defendants' motion, dismiss Jacobi's claims under FRCP 23.1, grant defendants' motion to strike supplemental authority, and close this case.[4]

---

[1] ECF 48.

[2] ECF 49.

[3] ECF 50.

[4] I find this matter suitable for resolution without oral argument. L.R. 78-2.

# Background[5]

EchoStar is a Nevada holding company whose wholly-owned subsidiaries design and distribute digital set-top boxes for satellite TV service providers and cable companies and provide digital broadcast and satellite services to DISH Network and other satellite services.[6] Ergen has been Chairman and a director of EchoStar since 2007, he is the company's majority shareholder, and he served as CEO until 2009.[7] When Ergen stepped down as CEO, he was relieved of any significant management responsibility.[8] Ergen is also the majority shareholder and Chairman of the board of EchoStar's spinoff company, DISH Network, which is also one of EchoStar's primary customers.[9]

On March 31, 2011, EchoStar's three-member compensation committee, consisting of Tom Ortolf, C. Michael Schroeder, and Joseph Clayton, awarded Ergen 1.5 million stock options to purchase EchoStar's Class A common stock, valued at $21.6 million.[10] Jacobi alleges that the award violated the limitations of EchoStar's shareholder-approved amended and restated 2008 stock incentive plan (the "SIP"), which provides, "no Participant may be granted Awards . . . in the aggregate in respect of more than 800,000 Shares in any one calender year. . . ."[11] Jacobi characterizes the award as "not in fact 'compensation' at all, but rather a stealth dividend issued to the controlling shareholder."[12] He contends that the award of options for the excess 700,000 shares two years after Ergen stepped down as CEO was an ultra vires act, and that the sheer size of the

---

[5] These facts are taken from Jacobi's amended complaint, ECF 49, construed in the light most favorable to him; they are not intended as any finding of fact.

[6] ECF 49 at ¶ 3.

[7] *Id*. at ¶¶ 2, 4.

[8] *Id.* at ¶ 54.

[9] *Id.* at ¶¶ 17, 34, 38.

[10] *Id*. at ¶¶ 5, 48.

[11] *Id.* at ¶ 47.

[12] *Id.* at ¶ 59.

entire 1.5 million-option award "was fundamentally unfair to the Company for a host of reasons."[13]

Jacobi sues the board of directors at the time of the award (Ergen, Ortolf, Schroeder, Michael Dugan, R. Stanton Dodge, Joseph Clayton, and David Moskowitz) for fiduciary breaches, and he sues Ergen separately for fiduciary breaches and unjust enrichment—all derivatively on behalf of EchoStar.[14]  By the time Jacobi filed suit, EchoStar's board consisted of seven directors: defendants Ergen, Dugan, Dodge, Ortolf and Schroeder, and non-defendants Anthony M. Federico and Pradman P. Kaul.[15]  Jacobi did not make a pre-suit demand on the board to challenge the award, and he alleges that demand would have been "a futile and useless act because the Current Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action."[16]

## A.     The first motion to dismiss

Defendants moved to dismiss Jacobi's original complaint, arguing that Jacobi failed to sufficiently plead demand futility or meet his pleading obligations under FRCP 12(b)(6).[17]  Jacobi responded that he had sufficiently pleaded demand futility under *Aronson v. Lewis* and met his pleading burden under FRCP 12(b)(6).[18]  The *Aronson* test for demand futility applies when the challenged transaction is the result of board action[19] and asks "if a complaint has created a reasonable doubt as to whether the directors, having made a business decision, were disinterested and independent, or likely entitled to the business judgment rule's protection."[20]  Jacobi argued that he had alleged facts sufficient to raise a reasonable doubt that the 2011 award was the product of a valid

---

[13] *Id*. at ¶¶ 50–51.

[14] *Id*. at ¶¶ 24–25.  Jacobi also initially sued defendants for corporate waste, but both parties agreed to dismiss that claim, and I dismissed it with prejudice in my previous order.  ECF 48 at 14.

[15] ECF 49 at ¶ 74.

[16] *Id*. ¶ 75.

[17] *See* ECF 17.

[18] *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).

[19] *Shoen v. SAC Holding Corp.* 137 P.3d 1179, 1184 (Nev. 2006).

[20] *Shoen*, 137 P.3d at 1182.

exercise of business judgment, so demand was excused.

I disagreed. I found that the challenged transaction as alleged in the original complaint was not the result of board action, so I instead applied the *Rales v. Blasband* demand-futility test.[21] The *Rales* test asks "whether a majority of the directors had a disqualifying interest in the matter or were otherwise unable to act on the demand with impartiality."[22] Because Jacobi failed to plead with sufficient particularity facts showing that a majority of the board of directors lacked the ability to impartially consider his pre-suit demand, I dismissed Jacobi's claims under FRCP 23.1, declined to reach defendants' 12(b)(6) arguments, and gave Jacobi one more chance to plead demand futility.[23]

**B.   Defendants' motion to dismiss the amended complaint**

Jacobi's timely filed amended complaint prompted a second motion to dismiss. Defendants argue that Jacobi still fails to plead demand futility with particularity as required under FRCP 23.1 and that he has failed to state any plausible claim for relief under FRCP 12(b)(6).[24] Defendants attach a red-lined version of Jacobi's amended complaint and argue that the new facts Jacobi alleges "merely repackage the insufficient facts alleged in the initial complaint."[25] In response, Jacobi again urges me to apply the *Aronson* test for demand futility—the approach I declined to apply in my previous order.[26] Jacobi argues that defendants' dismissal motion should be denied because he has sufficiently pled demand futility under either the *Aronson* or *Rales* test, and that he has met his pleading burden under FRCP 12(b)(6).[27]

---

[21] *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993)).

[22] *In re Computer Sci. Corp. Derivative Litig.*, 244 F.R.D. at 586 (citing *Rales*, 634 A.2d at 934).

[23] *See* ECF 48.

[24] ECF 50.

[25] *Id.* at 2.

[26] ECF 53 at 14; ECF 48 at 4–5 (finding that the *Rales* test applied to Jacobi's claims and declining to apply *Aronson* because the challenged transaction was not a result of director action).

[27] *See* ECF 53.

## Discussion

**I.    Motion to dismiss**

### A.    Pleading and testing demand futility

As I explained when dismissing Jacobi's original complaint, shareholder derivative suits are anathema to the general rule that "a corporation's 'board of directors has full control over the affairs of the corporation,'" which includes the decision "whether to take legal action on the corporation's behalf."[28]  Before a shareholder can file suit on the company's behalf, he must first demand that the board obtain for the company "the action that [he] desires."[29]  The pre-suit demand requirement is excused only if the plaintiff demonstrates in his complaint that the demand would have been futile.[30]  To determine demand futility, the district court applies the law of the state of incorporation—in this case, Nevada.[31]  When a shareholder files derivative claims without a pre-suit demand, he must plead "with particularity . . . the reasons for not obtaining the action or not making the effort."[32]  The relevant facts "must be put forth in the complaint and not merely in subsequent briefs."[33]  This heightened pleading burden "is . . . more onerous than that required to withstand a Rule 12(b)(6) motion."[34]

Nevada courts apply one of two tests developed by the Delaware courts to evaluate the plaintiff's allegations to determine whether demand is futile and thus excused.[35]  As the Nevada

---

[28] *Shoen*, 137 P.3d at 1178–79.

[29] *Id.* at 1179.

[30] *See id.* at 1184.

[31] *See In re Silicon Graphics, Inc. Secs. Litig.*, 183 F.3d 970, 989–90 (9th Cir. 1999) (*abrogated on other grounds by S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008); ECF 49 at ¶ 16 (alleging that EchoStar is a Nevada corporation).

[32] FED. R. CIV. P. 23.1.

[33] *Ryan v. Gifford*, 918 A.2d 341, 357 (Del. Ch. 2007).

[34] *Weiss v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008) (quotation omitted).

[35] *In re Amerco Derivative Litig.*, 252 P.3d 681, 697–98 (Nev. 2011).

Supreme Court explained in *Shoen v. SAC Holding Corp.*, "in those cases in which the directors approved the challenged transaction[]," the court applies the test from *Aronson v. Lewis*.[36] The two-pronged *Aronson* test "applies to determine if a complaint has created a reasonable doubt as to whether the directors, having made a business decision, were disinterested and independent, or likely entitled to the business judgment rule's protection."[37] But "where the contested corporate transaction is not the result of director action," the test from *Rales v. Blasband* applies, and "the demand futility analysis is limited to whether a majority of the directors had a disqualifying interest in the matter or were otherwise unable to act on the demand with impartiality."[38]

### B. The *Rales* test for demand futility applies to Jacobi's amended complaint because the challenged transaction was not the result of board action.

All of Jacobi's claims challenge a single transaction: the compensation committee's March 31, 2011, award to Ergen of 1.5 million EchoStar stock options to purchase EchoStar's Class A common stock.[39] I found that Jacobi's original complaint lacked facts tying the board of directors to the challenged award.[40] I explained that Jacobi's conclusory allegations that "the Board granted" these stock options were contradicted by the more particularly plead facts in the original complaint that the decision was made exclusively by the three-member compensation committee.[41] I also noted that, although Jacobi alleged a number of things the board did *not* do, his allegations showed that all affirmative action taken in making the challenged award was performed by the compensation

---

[36] *Shoen,* 137 P.3d at 1184; *see also In re Computer Sci. Corp. Derivative Litig.*, 244 F.R.D. 580, 586 (C.D. Cal. 2007) (applying Nevada law and citing *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984), *overruled on other grounds by Brehm v. Eisner*, 746 A.2d 244, 254 (Del. 2000)).

[37] *Shoen*, 137 P.3d at 1182.

[38] *Id.* at 1187; *In re Computer Sci. Corp. Derivative Litig.*, 244 F.R.D. at 586 (citing *Rales*, 634 A.2d at 934).

[39] ECF 49 at 24–25.

[40] ECF 48 at 5–6.

[41] *Id.* at 5.

committee alone.[42] Because the challenged transaction was not the result of an affirmative vote by the board itself or an action by a majority of the board members, I concluded that all of Jacobi's claims must be evaluated under the *Rales* test for demand futility.[43] I then found that Jacobi's allegations did not create a reasonable doubt that a majority of the board of directors lacked the ability to impartially consider his pre-suit demand,[44] so I dismissed his complaint for failure to sufficiently plead demand futility and gave him one more chance to do so.[45]

Now, in response to defendants' motion to dismiss his amended complaint, Jacobi again urges me to apply *Aronson* because the board of directors made "a conscious decision to refrain from acting" to invalidate the challenged transaction.[46] Applying Delaware law, Jacobi contends that the board had an affirmative duty to ensure that the transaction was "entirely fair" to the company and its minority shareholders;[47] because the board failed to do so, *Aronson* applies. And even if *Rales* applies, Jacobi argues, he has met his burden because he has alleged that a majority of the board knew that the challenged award was improper.[48]

Defendants maintain that *Rales* is the correct test because the decision to issue the 2011 award was solely that of the compensation committee—a minority of the full board defendants.[49] They argue that Jacobi failed to meet his heightened pleading obligations under FRCP 23.1 under either test because he has not plead facts to show (1) that the directors were disinterested and independent (as required under *Rales* and the first prong of *Aronson*), or (2) that the directors were

---

[42] *Id.* at 6.

[43] *Id.* (citing *Shoen*, 137 P.3d at 1186 (recognizing the "especially strong" need for a demand when "it is not alleged that the board has affirmatively voted for the alleged ultra vires acts.")).

[44] ECF 48 at 7.

[45] *Id.* at 13–14.

[46] ECF 53 at 14.

[47] *Id.* at 6–7.

[48] *Id.* at 15.

[49] ECF 50 at 5.

not entitled to the business-judgment rule's protection (as required under the second prong of *Aronson*).[50]

The only new allegations that Jacobi offers to tie the challenged award to the board are facts suggesting that the compensation committee knowingly and intentionally violated the plan, that the entire board was aware of the violation,[51] and that "the Board generally, and the Compensation Committee specifically, did not submit the award to the company's shareholders for their approval."[52] In short, Jacobi again highlights things the board allegedly did *not* do—and he still lacks facts to show that the board affirmatively voted for or approved the challenged transaction.[53]

Because the challenged transaction alleged in the amended complaint still was not the result of an affirmative vote by the board itself or an action by a majority of the board members,[54] *Rales* controls.[55] I thus again consider whether Jacobi's "particularized factual allegations . . . create a reasonable doubt that, as of the time the complaint [wa]s filed, [a majority of] the board of directors could have properly exercised its independent and disinterested business judgment in responding to" Jacobi's demand.[56] I continue to "accept as true each of the complaint's particularized factual allegations and draw every fair factual inference flowing from those particularly alleged facts" in

---

[50] *Id.* at 6.

[51] ECF 49 at ¶¶ 60–70.

[52] *Id.* at ¶ 58.

[53] I decline to adopt the entire-fairness standard as urged by Jacobi to impose on the board a duty to act and equate the board's inaction with action. As defendants note, Nevada law—not Delaware law—governs the duties owed by and the liabilities of the board defendants. ECF 54 at 4. Jacobi has offered no controlling authority showing that the board was obligated to ensure that the challenged transaction was entirely fair, and that its failure to do so constituted board action for demand-futility purposes.

[54] *See Shoen*, 137 P.3d at 1186 (recognizing the "especially strong" need for a demand when "it is not alleged that the board has affirmatively voted for the alleged ultra vires acts").

[55] *See* ECF 48 at 4–7.

[56] *Rales*, 634 A.2d at 934.

1  Jacobi's favor.[57]

### C. Demand futility under *Rales*

Under the *Rales* test, "directors' independence can be implicated by particularly alleging that the directors' execution of their duties is unduly influenced, manifesting 'a direction of corporate conduct in such a way as to comport with the wishes or interests of the person doing the controlling.' A lack of independence also can be indicated with facts that show that the majority is 'beholden to' directors who would be liable or for other reasons is unable to consider a demand on its merits . . . ."[58]

Jacobi argues that, "[b]ecause the entire fairness standard applies to Ergen's receipt of the 2011 Award, the business judgment rule necessarily does not, *which a fortiori* suffices to meet the reasonable doubt demand futility standard [under *Rales*] and the second prong of *Aronson*."[59] Defendants respond that Nevada has only adopted Delaware law for demand-futility analysis and has not adopted the entire-fairness test.[60]

I decline to apply the entire-fairness standard as urged by Jacobi to conclude that, simply because the challenged transaction benefitted a controlling shareholder, the transaction falls outside of the business-judgment rule's protection and automatically satisfies *Rales*. As the Nevada Supreme Court explained in *Shoen*:

> [*Rales*] looks not at whether the board majority approving the alleged transaction is entitled to the business judgment rule's protection for that action, but rather at "whether the board that would be addressing the demand can impartially consider its merits without being influenced by improper considerations," [so] that it could "properly exercise[ ] its independent and disinterested business judgment in responding to a demand."[61]

Thus, the relevant inquiry under *Rales* is not whether the business-judgment rule protects the

---

[57] *Shoen*, 137 P.3d at 1180.

[58] *Id*. at 1183 (quoting *Aronson*, 473 A.2d at 816; *Rales*, 634 A.2d at 936).

[59] ECF 53 at 3.

[60] ECF 54 at 4.

[61] *Shoen*, 137 P.3d at 1183 (quoting *Rales*, 634 A.2d at 934).

challenged transaction but whether the board considering the demand could exercise its independent and disinterested business judgment *in responding to the demand.* So, whether the challenged transaction is entitled to the business-judgment rule's protection—or whether entire fairness applies to deprive it of that protection—is irrelevant to the *Rales* demand-futility analysis.

> **D. Jacobi's amended allegations still do not create a reasonable doubt that a majority of the board of directors lacked the ability to exercise independent and disinterested business judgment to consider his pre-suit demand.**

Nobody disagrees that Ergen is neither independent nor disinterested; and there remains no debate that Federico, who joined the board after the subject stock-option award, is disinterested and independent. This leaves me to consider only whether Jacobi's amended complaint satisfies the *Rales* test for at least three of the other board members: compensation committee members Ortolf and Schroeder, and the remaining board members—Dodge, Dugan, and Kaul—so that Jacobi's pre-suit demand was excused as futile.

### 1. Ortolf

To create a reasonable doubt that Ortolf was capable of a disinterested and independent consideration of his demand, Jacobi alleges that Ortolf, as a member of the compensation committee that granted the stock options, faces "a substantial likelihood of liability" rendering him "incapable of objectively considering a demand."[62] As he did in the original complaint, Jacobi alleges that Ortolf "has a long and substantial relationship with Ergen," first from 1988–1991 and later beginning in 2005, Ergen having put Ortolf in executive positions and on boards.[63] He concludes that this history demonstrates that "Ortolf is dominated and controlled by Ergren" rendering "Ortolf . . . incapable of making an independent and disinterested decision to institute and vigorously prosecute this action."[64] As I explained in my previous order, Ortolf's membership on the committee when it made the stock-option-grant decision is not enough to raise a reasonable doubt that Ortolf could

---

[62] ECF 49 at ¶ 79.

[63] *Id.* at 80.

[64] *Id.*

impartially consider the demand.[65]

So Jacobi now adds that the committee knowingly and intentionally violated the SIP when it granted the award.[66] Ortolf served on the board that adopted the SIP in 2008, and the board that adopted the 2009 amendments, so he was aware of the 800,000 share calendar-year limit.[67] Jacobi argues that, because Ortolf served on the board that adopted the SIP *and* the committee that made the 1.5 million share award to Ergen, it is reasonable to infer that Ortolf violated the SIP knowingly and intentionally.[68] Because a knowing and intentional violation of the SIP could subject Ortolf to a breach-of-fiduciary-duty claim under Nevada law, I find that Jacobi has alleged sufficient facts to create a reasonable doubt that Ortolf could impartially consider a pre-suit demand and has now met his FRCP 23.1 pleading burden for Ortolf.[69]

### 2. Schroeder

Jacobi alleges that, as a member of the compensation committee that knowingly and intentionally granted the limit-exceeding award, Schroeder is also interested because he too faces a substantial likelihood of liability.[70] Jacobi pleads that, like Ortolf, Schroeder served on the board that adopted the SIP in 2008 and the 2009 amendments.[71] It is plausible from these facts that Schroeder, as a member of the compensation committee, knowingly and intentionally violated the SIP, would face a substantial likelihood of liability, and would be unable to impartially consider Jacobi's demand as a result. Just as these allegations are adequate to satisfy *Rales* for Ortolf, I find

---

[65] ECF 48 at 8.

[66] *Id.* at ¶ 58.

[67] *Id.* at ¶¶ 60–62.

[68] *Id.* at ¶¶ 66–67.

[69] For the reasons outlined in my previous order, I do not find that Ortolf's alleged history of business relationships with Ergen excuse the demand. *See* ECF 48 at 10–11.

[70] ECF 49 at ¶¶ 77, 79.

[71] *Id.* at ¶¶ 62–63.

them adequate to show a lack of independence on Schroeder's part.[72]

### 3. Dugan and Kaul

Jacobi's allegations against Dugan and Kaul are thin. Dugan and Kaul were not members of the compensation committee that allegedly violated the SIP with the 2011 award. Dugan was a member of the board that adopted the SIP and the 2009 amendments,[73] and he was a member of the board at the time the award was made.[74] But these facts are insufficient to subject Dugan to liability for the committee's award—an award he played no affirmative role in making—so Jacobi has not pled facts to show that Dugan and Kaul were interested on that basis.

Nor does Dugan and Kaul's employment with EchoStar excuse the demand. Jacobi again alleges that "Dugan is the Chief Executive Officer and President" of EchoStar and "Kaul is the President of a wholly-owned subsidiary of EchoStar."[75] Both received more than $800,000 in compensation from EchoStar in 2011 "and as such depend on their employment with the Company for their livelihood."[76] They are therefore "incapable of making an independent and disinterested decision to institute and vigorously prosecute this action."[77] Jacobi further alleges that neither Dugan nor Kaul is "considered independent under either the requirements of NASDAQ or the SEC."[78]

But as I explained in my previous order, that Dugan or Kaul depends on his employment at

---

[72] I note that Jacobi's allegations that Schroeder was interested simply because he served on the board of DISH Network's predecessor company from 2003 until it became EachoStar and that Ergen later elected him to serve on EchoStar's board, *Id.* at ¶ 43, fall far short of showing that Schroeder was so beholden to Ergren that he would have been incapable of impartially considering Jacobi's demand. I find that Jacobi has sufficiently plead demand futility for Schroeder solely because Schroeder faced a substantial likelihood of liability for his role in the challenged transaction.

[73] *Id.*

[74] *Id.* at ¶ 60.

[75] *Id.* at ¶ 82.

[76] *Id.*

[77] *Id.*

[78] *Id.*

EchoStar for his livelihood has nothing to do with Ergen. As Jacobi alleges in paragraph nine of his amended complaint, Ergen "stepped down as CEO" and is "no longer . . . responsible for managing the Company; his only role now is to provide 'guidance' to management in his capacity as Chairman."[79] Thus, Jacobi still has pled no facts to suggest that Dugan's employment at a company that Ergen no longer manages—or Kaul's employment at the subsidiary of a company Ergen no longer manages—could be threatened by their reconsideration of Ergen's stock-options award.[80] Even if Jacobi had connected these dots, the assumption that a director lacks independence based on his employment is still not enough.[81] Because Jacobi still has not pled sufficient facts to raise a reasonable doubt that Dugan or Kaul could impartially consider his pre-suit demand, he has not met his FRCP 23.1 pleading burden for these board members.

**4.   Dodge**

The tie-breaking board member is Dodge. Dodge was a member of the board when the 2011 award was made.[82] Dodge was also on the board that filed the 2009 proxy that sought approval of the SIP amendments.[83] But Dodge was not a member of the compensation committee when the award was made,[84] nor was he a member of the board that adopted the SIP in 2008 or the board that adopted the 2009 amendments.[85] It is reasonable to infer from these facts that Dodge knew about the 800,000 share per calendar-year limit, but these facts are not sufficient to raise a reasonable doubt that Dodge could impartially consider Jacobi's demand. Unlike Ortolf and Schroeder, Dodge would

---

[79] *Id.* at ¶ 9. Jacobi further alleges that Ergen's "exact responsibilities as Chairman [of EchoStar] are unclear." *Id.* at ¶ 31.

[80] Jacobi alleges that Ergen has the power to elect a majority of the directors, *see id.* at ¶ 34, but he alleges nothing of Ergen's ability to effect employment decisions at EchoStar.

[81] *See* ECF 48 at 12–13.

[82] ECF 49 at ¶ 60.

[83] *Id.* at ¶ 63.

[84] *Id.*

[85] *Id.* at ¶¶ 62–63.

not face a substantial likelihood of personal liability because he played no affirmative role—intentionally or otherwise—in making the challenged award.

Jacobi also alleges that Dodge is interested because he "is controlled and dominated by Ergen, as he is dependent on Ergen for his continued employment at DISH Network." But "demand futility cannot be pled merely on the basis of allegations that directors acted or would act to preserve their positions."[86] For these reasons, Jacobi has not satisfied his FRCP 23.1 pleading burden for Dodge.

### E. Conclusion

Jacobi has failed to create a reasonable doubt that a majority of the board of directors lacked the ability to exercise independent and disinterested business judgment to consider his pre-suit demand. He has pled facts to show that Ergen, Ortolf, and Schroeder could not impartially consider a pre-suit demand. But he lacks facts to show that the remaining four board members—Federico, Dugan, Kaul, and Dodge—were disinterested. I thus again dismiss all claims under FRCP 23.1, and I decline to reach defendants' other dismissal arguments. Because I have already given Jacobi leave to amend once, and he remains unable to conjure up enough facts to plead demand futility, I find that further amendment would be futile, and I dismiss all claims without leave to amend.

## II. Motion to Strike

About nine months after defendants filed their dismissal motion, Jacobi filed—without leave of court—a notice of supplemental authority.[87] Jacobi's supplement includes two pages of legal argument and the Delaware Court of Chancery's opinion, *In re Ezcorp Inc. Consulting Agreement*

---

[86] *In re Sagent Tech.*, 278 F. Supp. 2d at 1089 (citing *Grobow*, 539 A.2d at 188, *overruled on other grounds*, 746 A.2d 244 (Del. 2000)).

Jacobi further alleges that Dodge is not disinterested because he is not considered independent under either the requirements of NASDAQ or the SEC. ECF 49 at ¶ 83. Again, the independence standards of these entities and the independence standard for the demand-futility analysis are unrelated. *Compare* NYSE Listed Company Manual § 303A.02 (2009), and NASDAQ Listing Rule § 5605 *with Rales*, 634 A.2d at 936. *See also McKnight*, 2013 WL 8284817, *9; *accord*, *In re Google, Inc.*, 2013 WL 5402220, * 7.

[87] ECF 55.

*Derivative Litigation*, 2016 WL 301245 (Del. Ch. Jan. 25, 2016).  Defendants move to strike the supplement arguing that the proffered authority is nonbinding, Jacobi filed it without leave of court, and that the supplement improperly contains legal argument.[88]  Jacobi offers no response.

I grant defendants' motion and strike Jacobi's supplement because it was improperly filed without leave of court.  I also note that *Ezcorp* would not change the outcome of this case because it is nonbinding and applies Delaware's entire-fairness standard, a standard that has not been adopted by the Nevada Supreme Court.  *Ezcorp*'s persuasive value is further limited because it applies entire fairness to the *Aronson* analysis, and this case is governed by the *Rales* demand-futility standard.  For these reasons, defendants' motion to strike is granted.

### Conclusion

Accordingly, with good cause appearing and no reason to delay, IT IS HEREBY ORDERED, ADJUDGED, and DECREED that **Defendants' Motion to Dismiss [ECF 50] is GRANTED;** the complaint is **DISMISSED** under FRCP 23.1 for failure to file a pre-suit demand or sufficiently plead demand futility.

IT IS FURTHER ORDERED that **Defendants' Motion to Strike [ECF 56] is GRANTED.**

The Clerk of the Court is instructed to enter judgment accordingly and **CLOSE THIS CASE.**

Dated this 17th day of March, 2016.

_____
Jennifer A. Dorsey
United States District Judge

---

[88] ECF 56 at 2.